IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Mildred A. Sorrells, | ) |
|         Plaintiff, | ) C/A No.: 9:10-1225-MBS |
| vs. | ) |
| Michael J. Astrue, Commissioner of Social Security, | ) **O R D E R** |
|         Defendant. | ) |

This is an action brought pursuant to Section 205(g) of the Social Security Act (the "Act"), codified as amended at 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner").

I. PROCEDURAL HISTORY

Plaintiff Mildred A. Sorrels alleges that she has been disabled since October 15, 2003 because of lower back pain, middle back pain, neck pain, chronic fatigue, arthritis, irritable bowel syndrome, fibromyalgia, anxiety, depression, pain in her right foot and right hip, and short term memory loss. Plaintiff protectively filed an application for a period of disability and disability insurance benefits on December 26, 2006. Her application was denied initially and upon reconsideration. Plaintiff requested a hearing before an administrative law judge ("ALJ"). The ALJ held a video hearing on June 24, 2009. On August 17, 2009, the ALJ issued a decision that Plaintiff was not disabled under sections 216(i) and 223(d) of the Act. The decision of the ALJ became the "final decision" of the Commissioner on March 17, 2010, after the Appeals Council determined that there was no basis for granting Plaintiff's request for review. Plaintiff thereafter brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the "final decision" of the Commissioner.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge Bristow Marchant for a Report and Recommendation. On April 26, 2011, the Magistrate Judge filed a Report and Recommendation in which he recommended that the Commissioner's decision to deny benefits be affirmed. Plaintiff filed objections to the Report and Recommendation on May 16, 2011, to which the Commissioner filed a reply on May 31, 2011.

This matter now is before the court for review of the Magistrate Judge's Report and Recommendation. The court is charged with making a de novo determination of any portions of the Report of the Magistrate Judge to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b).

## II. STANDARD OF REVIEW

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze,* 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a de novo review of the factual circumstances that substitutes the court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). "From this it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the

administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

The Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). However, the Commissioner's denial of benefits shall be reversed only if no reasonable mind could accept the record as adequate to support that determination. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

### III.  DISCUSSION

A.    Plaintiff's Testimony

Plaintiff testified at her hearing before the ALJ that she was born on March 19, 1956. R. 25. She finished the tenth grade and subsequently obtained her GED. *Id.* at 25-26. Plaintiff has past relevant work experience at convenience stores, where she would stand, lift, stock, mop, and sweep. *Id.* at 27. Plaintiff also has past relevant work experience as a weaver. *Id.* at 28.

According to Plaintiff, she experienced degenerative disc disease commencing in 2003. *Id.* She experiences mild to moderate pain every day in her lower back, hips, and both legs. *Id.* at 29. She also experiences muscle spasms in her chest, back, and legs two or three times each week. *Id.* at 29-30. Plaintiff takes Lortab to relieve pain and must elevate her knees when she lies down. *Id.* at 31-32. Plaintiff wears a back brace to help keep her back straight. *Id.* at 33. Plaintiff denies the ability to stand, sit, or walk for more than twenty minutes at a time. *Id.* 34-35. Plaintiff asserts that she cannot bend, climb, or squat without pain, that she cannot lift more than eight pounds, and that she is dizzy and weak. *Id.* at 36. Plaintiff states that her hands and arms go numb two or three times

a week, causing her to drop items she is holding. *Id.* at 39-40. Plaintiff testified that she has chronic fatigue, headaches, and nausea. *Id.* at 40-43. Plaintiff further testified that she has pain in her chest, shoulders, elbows, and rib cage, and that she has trouble sleeping. *Id.* at 44-46. Plaintiff also testified that she is depressed and has lost weight because she has no appetite. *Id.* at 46. According to Plaintiff, her husband had to take over paying the bills because she could not focus. *Id.* at 47. Plaintiff testified that she spends two to three hours a day crying. *Id.* at 48. She does not visit friends, go to church, or go to the movies. *Id.* at 49. Plaintiff's husband does the cooking and shopping. *Id.* at 50.

B.   Medical Records

The medical records in the file reveal that Plaintiff was seen by S. Emmett Lucas III, M.D. on November 8, 2005 for low back and bilateral leg pain. Plaintiff complained of low back and bilateral leg pain that had been worsening over time. An x-ray showed significant degenerative changes at L5-S1 with almost complete disc space collapse. R. 169. A lumbar myelography was performed on November 17, 2005. The procedure revealed Grade I degenerative spondylolisthesis at L4-5 secondary to disc disease and severe facet osteoarthropathy and moderate right sided neuroforaminal narrowing at L5-S1, largely secondary to bony osteophyte formation arising from the vertebral endplates. R. 174. Dr. Lucas discussed with Plaintiff her options, which were just living with it, taking medication, epidural blocks, or surgery. Plaintiff agreed to epidural blocks.

Plaintiff was examined by Garland D. Glenn II, M.D. on January 9, 2006 for pain in her neck, lower back, and pelvic area, and extending down her legs to her ankles. R. 179.

Plaintiff was seen by Dr. Condua on March 29, 2006 complaining of back pain, nausea, and anxiety. Plaintiff was prescribed Lortab and Xanax. R. 209. Plaintiff again was seen by Dr. Condua

on May 16, 2006 complaining of low back pain and muscle spasms in her lower back. Dr. Condua noted that Plaintiff's anxiety symptoms were controlled with Xanax. R. 208. Plaintiff again presented to Dr. Condua on May 16, 2006 and was continued on Lortab for back pain and Xanax for anxiety. R. 207.

On May 30, 2006, Dr. Condua reported that Plaintiff suffered from chronic fatigue secondary to depression, and that she exhibited a moderate work-related limitation in function due to her medical condition. R. 222.

Plaintiff was examined by Dr. Condua on June 20, 2006 and reported, among other things, fatigue, low energy, and chronic back pain. R. 204. On July 18, 2006, Plaintiff reported continued back pain and headaches. R. 203. Plaintiff was continued on Lortab and Xanax. R. 201.

Plaintiff was admitted to Oconee Memorial Hospital on July 24, 2006 complaining of heartburn, left lower quadrant pain, right lower quadrant pain, right upper quadrant pain, and dysphagia. A colonoscopy was performed that was negative and showed no endoscopic findings suggesting pathology. R. 185. A CT scan of the abdomen was performed on July 25, 2006 at the Hospital. The CT scan showed renal calculi and a low density lesion of the right lobe of the liver that was likely benign. R. 187. Also, a CT scan of the pelvis was essentially negative. R. 188.

On September 21, 2006, Plaintiff was seen by Dr. Condua. Plaintiff reported continued back pain. She was continued on Lortab and Xanax. R. 199.

Plaintiff was seen at Oconee Memorial Hospital on September 29, 2006 by Greg Cromer, M.D. Plaintiff complained of left foot pain. Plaintiff was evaluated and her foot was x-rayed. Dr. Cromer opined that Plaintiff was suffering from acute tendonitis secondary to a bony spur on top of the foot. Plaintiff was prescribed Lortab and referred to orthopedic surgery. R. 192-93.

Plaintiff was seen by Dr. Condua on January 5, 2007 for back pain, anxiety, and foot pain. Plaintiff complained of a loss of appetite. Plaintiff reported that her foot had been run over by a trailer and had been thrown backwards onto a concrete floor. Plaintiff stated that she was in constant pain and the symptoms were getting progressively worse. R. 197. Plaintiff complained that she felt worn out. She was continued on Lortab, Xanax, and referred to an orthopaedist. R. 196.

On March 20, 2007, Plaintiff was examined by W. Russell Rowland, M.D. for a disability evaluation. Plaintiff complained of back pain, neck pain, irritable bowel syndrome, arthritis at the lower back, elbow, shoulders, and hips, right foot pain, depression, and fibromyalgia. Plaintiff reported constant pain in the lumbar area that is increased by bending and walking. Plaintiff stated she could stand 20 minutes and sit 20 minutes, but walks very little because of pain in the hip areas and knees as well as fatigue. Plaintiff complained of a constant sharp pain in her lower extremities that is increased with strenuous activity, as well as neck pain. Plaintiff stated sometimes her arms and hands would go to sleep at night. Plaintiff reported depression for approximately six years and sleeplessness, but reported that she had been on Cymbalta and it helped the best.

Dr. Rowland's examination revealed a normal range of motion in the upper extremities with strength 5/5 and grip 5/5 bilaterally. Plaintiff's hips flexed 100 degrees and other range of motion was normal in both hips. Plaintiff had some mild tenderness of the anterior hip joints, but internal and external rotation of the hip joints caused no pain. The knees flexed 145 degrees and both extended to 0 degrees. Her ankles and normal range of motion. Plaintiff's strength was 5/5 in lower extremities. Plaintiff squatted 100 percent and used the chair to assist in arising. Her spinal alignment was normal, cervical spine range of motion was normal. Plaintiff had tenderness in specific areas, including the posterior cervical spine, lower posterior lateral portion of the neck; upper

trapezius, interscapular area, dorsal spine, lateral shoulders, medial elbows, lateral hips, medial knees, infraclavicular areas, and costochondral areas. Dr. Rowland opined that Plaintiff fit the criteria to make a diagnosis of fibromyalgia. R. 224-28.

George Chandler, M.D. performed a Physical Residual Functional Capacity Assessment on Plaintiff on April 2, 2007. Dr. Chandler determined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk for about six hours in an eight-hour workday; sit for a total of about six hours in an eight-hour workday, and was unlimited in her ability to push and/or pull. Dr. Chandler stated that Plaintiff could climb ramp/stairs frequently, ladder/rope/scaffolds occasionally, balance frequently, stoop occasionally, and kneel, crouch, and crawl frequently. R.245-252.

Spurgeon N. Cole, Ph.D. examined Plaintiff on April 9, 2007. Dr. Cole noted that Plaintiff appeared to be in significant pain and did not attempt to promote or exaggerate symptoms. Plaintiff reported that she was disabled due to fibromyalgia, chronic fatigue syndrome, degenerative disk disorder, carpal tunnel syndrome, and panic attacks. Dr. Cole noted that Plaintiff was mildly depressed and apparently has had some anxiety attacks. Dr. Cole reported no evidence of any acute emotional problems, and that Plaintiff's social functioning was limited only by her physical problems. R. 264-66.

Dr. Rob Ronin completed a psychiatric review of Plaintiff on April 16, 2007, and opined that Plaintiff suffered from mild depression and had a mild degree of limitation as to restrictions of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence, or pace. Dr. Ronin determined that Plaintiff's affective orders and anxiety-related disorders were not severe. R. 231-44. Debra C. Price, Ph.D. also completed a psychiatric review of

Plaintiff on July 3, 2007, and reached the same conclusions. R. 273-85.

Plaintiff underwent a CT scan of the abdomen on June 25, 2007. The CT scan noted the renal calculus in the upper pole of the left kidney, which was unchanged in size and position from the prior exam. A CT scan of the pelvis showed a probable follicular cyst on the right ovary as well as degenerative changes involving the lower lumbar spine. R. 295.

On July 19, 2007, a second Physical Residual Functional Capacity Assessment was performed by Steven Fass, M.D. Dr. Fass determined that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand and/or walk about six hours in an eight-hour workday, sit about six hours in an eight-hour workday, and was unlimited in her ability to push and/or pull. Dr. Fass opined that Plaintiff was limited to occasionally climbing ramp/stairs, never climbing ladder/rope/scaffolds, frequently balancing, occasionally stooping, frequently kneeling and crouching, and occasionally crawling. Dr. Fass recommended that Plaintiff avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, and that she should avoid even moderate exposure to hazards. R. 287-94.

C.    The ALJ's Decision

Based on this and other evidence appearing in the record, the ALJ determined that Plaintiff has the following severe impairments: disorders of the back discogenic and degenerative, and disorders of muscle, ligament, and fascia. The ALJ determined that Plaintiff's medically determinable mental impairments of depression and anxiety, considered singly and in combination, did not cause more than minimal limitation in her ability to perform basic mental work activities and therefore were nonsevere. The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b), except Plaintiff could occasionally climb ramps/stairs, occasionally stoop and occasionally craw, and should never climb ladder/rope/scaffolds. The ALJ found that Plaintiff could frequently balance, kneel, and crouch. The ALJ further determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment.

The ALJ acknowledged that Plaintiff suffers from anxiety and depression, and that she walked somewhat stiffly. However, the ALJ found that Plaintiff overstated her limitations, restrictions, and disabling symptoms, and that her daily activities were not limited to the extent one would expect, given Plaintiff's complaints. The ALJ concluded that Plaintiff's impairments did not preclude her from engaging in all substantial gainful activity. The ALJ further noted that no treating or examining physician had placed permanent restrictions or limitations on Plaintiff's ability to perform basic work activities. The ALJ further noted that Plaintiff had provided no medical documentation for 2008 and 2009, and that Plaintiff's depression and anxiety were well controlled with medications. The ALJ found that Plaintiff was capable of performing past relevant work as a clerk/cashier, which was considered light, semiskilled, and past relevant work as a weaver, which was considered light, semiskilled work. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined under the Act, at any time from October 15, 2003, the alleged onset date, through September 30, 2007, the date last insured. R. 9-20.

D.     The Report and Recommendation

On judicial review, Plaintiff first contended that the ALJ erred in failing to consider the severity and impact on function of Plaintiff's fibromyalgia, chronic fatigue, emphysema, heel spurs,

and the combined effect of these impairments superimposed on Plaintiff's severe degenerative disc disease. The Magistrate Judge discerned no reversible error in the ALJ's findings and conclusions. The Magistrate Judge noted that the consulting and state agency physicians all found Plaintiff's depression to be mild, resulting in no functional limitations. The Magistrate Judge noted, as did the ALJ, that Plaintiff's depression and anxiety were well controlled by Xanax and that no physician had referred Plaintiff for any mental health treatment. The Magistrate Judge noted that the ALJ relied on various medical reports showing that Plaintiff had normal strength and range of motion and normal motor and sensory tests in her lower extremities, that there was no evidence of atrophy or edema with a normal station, and that although she moved stiffly she did not require the use of any assistive device. The Magistrate Judge pointed out that Plaintiff has received only conservative treatment for her condition. The Magistrate Judge determined that the medical record as a whole contains substantial evidence to support the ALJ's findings and the residual functional capacity assessment.

Plaintiff next argued that the ALJ erred in discrediting Plaintiff's subjective complaints. The Magistrate Judge noted that the ALJ thoroughly reviewed Plaintiff's testimony. For example, the ALJ noted that Plaintiff's complaints of weakness and numbness in her hands and arms was not supported by the objective evidence showing that Plaintiff had no signs of muscle atrophy and had 5/5 strength in her extremities, including in her grip strength. The Magistrate Judge found that the ALJ conducted a proper credibility analysis and that his decision reflected a proper consideration of the record and evidence.

Plaintiff also asserted that the ALJ's assessment of Plaintiff's residual functional capacity was not supported by substantial evidence. Plaintiff contended that the ALJ should have obtained the

testimony of a vocational expert. The Magistrate Judge noted, however, that the testimony of a vocational expert was not required in light of the ALJ's finding that Plaintiff could perform her past relevant work as a clerk/cashier and as a weaver. The Magistrate Judge further noted that the ALJ was not required to consider more restrictive limitations for Plaintiff that would preclude her past relevant work, when the ALJ had not found such limitations to exist. Accordingly, the Magistrate Judge recommended that the ALJ's decision be affirmed.

E.      Objections to the Report and Recommendation

Plaintiff first reasserts her contention that the ALJ did not properly consider the severity and impact on function of the combined effect of Plaintiff's impairments. "Congress explicitly requires that the combined effect of all the individual's impairments be considered, without regard to whether any such impairment, if considered separately, would be sufficiently severe[.]" Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989) (internal quotations omitted); see 42 U.S.C. § 423(d)(2)(B).

In this case, the ALJ found that Plaintiff had a severe impairments of the back and muscle, ligament, and fascia, as well as nonsevere mental impairments of depression and anxiety that caused no more than a minimal limitation in Plaintiff's ability to perform basic mental work activities. The ALJ noted that Plaintiff could take care of her personal needs and has never been treated by a mental health professional. The ALJ noted that Plaintiff occasionally shopped, went out to eat with family members, and enjoyed being around others. The ALJ also noted that Plaintiff watched television, talked on the phone, and handled finances. Although Plaintiff testified to the contrary, the record establishes that Plaintiff reported to Dr. Cole on April 9, 2007 that she engaged in these activities. R. 265-66. The ALJ also noted substantial evidence in the medical records that Plaintiff had normal range of motion, flexion, and strength in her limbs. The court concludes that the ALJ considered all

the evidence of Plaintiff's severe and nonsevere impairments separately and in combination, and found no evidence of a disability as contemplated by the Act. Plaintiff's objections are without merit.

Plaintiff next asserts that the ALJ erred in discrediting Plaintiff's subjective complaints. As the Magistrate Judge noted, the ALJ reviewed the medical records and found them to be inconsistent with Plaintiff's complaints of pain. The ALJ thoroughly discussed Plaintiff's testimony and compared her statements with records provided by Dr. Emmett, Dr. Glenn, Oconee Memorial Hospital, Dr. Condua, Dr. Rowland, Dr. Cole, and State medical consultants who evaluated Plaintiff. Although it is undisputed that Plaintiff experiences pain, the medical evidence does not support a finding that Plaintiff's pain is so severe, persistent, or limiting as to cause disabling effects. See Nelson v. Apfel, 166 F.3d 333, *3 (4th Cir. 1998) (unpublished). The court concurs with the Magistrate Judge's determination that substantial evidence supports the ALJ's conclusion. Plaintiff's objection is without merit.

Finally, Plaintiff contends that the ALJ erred in failing to obtain the testimony of a vocational expert. It is well established that the Commissioner uses a five-step process to evaluate a claim for disability insurance benefits. The Commissioner must ask, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, whether he could perform any other work in the national economy. 20 C.F.R. § 404.1520. If a decision regarding disability can be made at any step of the process, the inquiry ceases. 20 C.F.R. § 404.1520(a)(4). In this case, the inquiry ended at Step 4 when the ALJ determined that Plaintiff could return to her past relevant work despite her limitations. Plaintiff's objection is without merit.

The court concludes that ALJ's findings are supported by specific references to the evidence

upon which the ALJ bases his decision.  See See v. Washington Metro. Area Transit Auth., 36 F.3d 375, 384 (4th Cir. 1994).  Plaintiff has not demonstrated that the evidence is insufficient for "'a reasonable mind [to] accept [the ALJ's] conclusion[s].'"  McCarney v. Apfel, 28 F. App'x 277 (4th Cir. 2002) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  Accordingly, the court adopts the Report and Recommendation and adopts it herein by reference.

### III.  CONCLUSION

For the reasons stated herein and in the Report and Recommendation,

It is ORDERED that the Commissioner's decision be **affirmed**.

**IT IS SO ORDERED**.

/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

September 23, 2011.